UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| MATTHEW B. YANCICK | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-cv-1339 |
| | ) | |
| HANNA STEEL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## O P I N I O N and O R D E R

Before the Court are the Motion for Summary Judgment filed by Defendant, Hanna Steel Corporation, on September 21, 2009 [Doc. 23], the "Motion to Alter or Amend the November 16, 2009 Order" filed by Plaintiff, Matthew B. Yancick, on November 17, 2009 [Doc. 41], the Motion to Amend/Correct Memorandum in Support of Motion to Alter or Amend filed by Plaintiff on November 17, 2009 [Doc. 43], the "Objection" to Defendant's Motion for Summary Judgment filed by Plaintiff on November 18, 2009 [Doc. 44], and the Motions for Oral Arguments on Plaintiff's Motions filed by Plaintiff on November 20, 2009 [Docs. 46 and 48].

For the reasons set forth below, the Motion for Summary Judgment is GRANTED, the Motion for Reconsideration is DENIED, the Motion to Amend/Correct is DENIED AS MOOT, the "Objection" is DENIED, and the Motions for Oral Argument are DENIED.

**PROCEDURAL HISTORY**

Plaintiff's response to Defendant's Motion for Summary Judgment was due on October 30, 2009. Plaintiff failed to file a response that complied with the Local

Rules by the deadline. For the reasons outlined in this Court's November 16, 2009 Order, Plaintiff is not permitted to file a response to the Motion for Summary Judgment.

Plaintiff now has filed a "Motion to Alter or Amend November 16, 2009 Order" pursuant to Federal Rule of Civil Procedure 54(b) [Doc. 41]. Rule 54(b) does not provide a basis for relief that Plaintiff seeks. The Motion is DENIED. The deadlines imposed in this case mandate action; they are not starting dates for intention or diligence. Plaintiff was required to file a complete and Local Rule compliant response by the deadline and failed to do so. Whether he intended to do so or worked diligently to do so is irrelevant. Plaintiff's subsequent Motion to Correct a mistake in his memorandum in support of the Motion to Alter or Amend is DENIED AS MOOT.

Plaintiff's "objection" to consideration of Defendant's Motion for Summary Judgment is DENIED. Plaintiff's objection, that Defendant's exhibits were filed a day late and therefore should not be considered, is untimely because it was filed almost two months after filing of the Motion for Summary Judgment. In any event, the "objection" is wholly without merit.

Plaintiff's Motions for Oral Argument are similarly DENIED. Local Rule 7.1(A)(2) provides that "[a] party desiring oral arguments on a motion filed under subparagraph (B) of this Rule shall so specify in the motion or opposition thereto and shall state the reason why oral argument is desired." Plaintiff seeks oral arguments on the Motion to Alter or Amend but makes the request in a separate motion and did not specify the desire for oral arguments in the Motion to Alter or

Amend. As such, the Motion is DENIED. In any event, oral arguments on the Motion to Alter or Amend would not aid the Court in its determination. Plaintiff further requests oral arguments on the Motion for Summary Judgment. Plaintiff indicates that oral arguments are necessary in order to explain the "initial burden as the summary judgment movant." The Court does not require argument on the summary judgment standard.

The only motion that remains is the Motion for Summary Judgment

**BACKGROUND**

Matthew B. Yancick was employed by Hanna Steel Corporation at its plant in Pekin, Illinois from 2003 to December 12, 2005. Yancick's employment came to an end rather unfortunately: a steel coil fell onto his legs causing significant injury. Yancick ultimately received $265,000.00 from Hanna Steel's Worker's Compensation Insurance carrier for his work-place related injuries. Yancick alleges, however, that the accident was the culmination of work-place racial harassment by another Hanna Steel employee, Brad Johnson, who was operating the machinery from which the steel coil fell. On December 11, 2007, Yancick filed suit pursuant to 42 U.S.C. § 1981 alleging reverse racial harassment.

According to Yancick's deposition testimony, when Johnson started working for Hanna Steel, they had a fine relationship. (Matthew B. Yancick Dep. pp. 128-129). At some point, however, the relationship changed. In one incident between Yancick and Johnson at work, Johnson asked Yancick why he had a better radio and nice boots. (Yancick Dep. pp. 129-130). Yancick believed that this interaction had an "uncomfortable air to it" and mentioned the incident to Hershel Hicks, a

3

supervisor; he also indicated that the incident "didn't make any sense." (Id. at pp. 129-130, 152). There is no indication in the record that Yancick reported that this incident was a form of racial harassment. In another incident, Yancick was on his way to get a coil and stated:

> I'll never forget this. Brad saw me coming, and it was like a speed walk, I mean, right towards me like getting ready to pounce. And I wanted to get my coil. We stopped. He stopped with his nose about right here staring at me. I said nothing. I just stood there.
>
> ***
>
> Then he goes, May I get a coil behind you? And I was like, Sure. Then I got out of the way, got my crane out of the way, let him get his coil, and I settled down for a while but it was like being tested, I think.

(Id. at pp. 137, 143-144).

Yancick didn't know what Johnson's motivation was for his action and he reported this incident to Michael Duncan (his supervisor). Id. at pp. 152-153). Again, there is no indication in the record that Yancick reported this incident as race related. In another incident, Yancick testified that when he was asked to stay with Johnson while he was operating a crane because Johnson was new to the job, Johnson "blew up" and complained to his supervisor who then told Yancick to leave him alone. (Id. at pp. 146-147). There is no indication in the record that Yancick complained that this incident was race related. These incidents occurred around or prior to July, 2005. (Id. at pp. 136-137, 145).

Earlier, in January, 2005, Yancick states that he was talking about his colon surgery with Dean Lowe when Johnson approached them believing that they were talking about him. (Id. at pp. 178, 182). When Yancick indicated that they were not talking about him, Johnson raised his fist in what appeared, to Yancick, to be a

4

"black power symbol." (Id. at pp. 176-180, 182). He observed Johnson make this gesture to another co-worker in September, 2005. Yancick mentioned the incident to Duncan, but did not complain that it was race related. (Id. at pp. 182-183). Yancick further indicates that Johnson used the epithet "nigger" on a number of occasions. (Id. at pp. 180). It is clear from Yancick's deposition, however, that the term was used by Johnson in reference to himself. (Id. at pp. 189-190).

In addition to these specific incidents, Yancick testified that other behavior by Johnson was race motivated, including, among other things: leering, invading personal space, causing work slow-downs, displaying narcissistic, self-centered, and irrational behavior, [1] and failing to comply with company policy regarding meetings and equipment. (Id. at pp. 181-190). Yancick also believes that the manner in which Johnson spoke also was an indication that he acted based on race. (Id. at pp. 187).

When questioned about why he believed Johnson was behaving poorly, Yancick indicated that he believed that Johnson's behavior was "territorial or that alpha dog syndrome" and that, maybe, Johnson was upset about being moved from the slitter job to crane operator (which paid less) (Id. at pp. 143, 146). Yancick believed that because he did not allow Johnson to intimidate him, he and his work friends bore the brunt of Johnson's bad behavior. (Id. at pp. 173-174, 203). Yancick also believed that Johnson was abusing steroids, which would have accounted for the hostility, moods swings, paranoia, and Johnson's apparent change in physique. (Id. at p. 174). Nonetheless, Yancick stated that "I know he was racist. There was

---

[1] This is the Court's characterization based on Yancick's description of Johnson's behavior in the cited pages of his deposition.

5

never a doubt about that in my mind how he acted towards me and others." (Id. at pp. 174-174).

Yancick and Johnson were co-workers for less than a year. Johnson had no supervisory authority over Yancick. During the relevant time period, Hanna Steel maintained a workplace policy against all forms of harassment. The policy directs employees to report harassment to the Human Resources Manager, David Monroe, or the General Manager, Richard Daniels. The policy was given to Yancick upon hiring as a temporary worker and as a permanent worker; and, it was reiterated at a meeting on September 15, 2003 which Yancick attended.

Yancick enjoyed his time working at Hanna Steel and, in July, 2005, received a good job performance review. (Id. at p. 131, 134-135).

The evidence reveals that prior to the December 12, 2005 accident involving Yancick and Johnson, there were one or two incidents where steel coils accidentally fell from the same machine Johnson was operating in the same location. (Bill Kettering Dec. ¶ 7; Jamil Novoa Dec. ¶ 9; Jason Thomas Dec. ¶ 13). After the accident involving Plaintiff, Johnson received a Safety Violation Warning. (Sergio Becerra Declaration ¶ 16). A more severe sanction was not issued because Johnson was a trainee at the time of the accident and an investigation found that Plaintiff also was at fault for the accident (the report cited carelessness). (Becerra Dec. ¶ 17). Ironically, Johnson received a $1,000.00 Safety Award in January, 2006 (Becerra Dec. ¶ 28). The undisputed evidence reveals, however, that Johnson won the award after a random drawing.

6

## DISCUSSION

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court as to portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the movant has met its burden, to survive summary judgment the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which [s]he bears the burden of proof at trial." Warsco v. Preferred Tech. Group, 258 F.3d 557, 563 (7th Cir. 2001); See also Celotex Corp., 477 U.S. at 322-24. "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." Chemsource, Inc. v. Hub Group, Inc., 106 F.3d 1358, 1361 (7th Cir. 1997).

This Court must nonetheless "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989). In doing so, this Court is not "required to draw every conceivable inference from the record -- only those inferences that are reasonable." Bank Leumi Le-Isreal, B.M. v. Lee, 928 F.2d 232,

236 (7th Cir. 1991). Therefore, if the record before the court "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of material fact exists and, the moving party is entitled to judgment as a matter of law. McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 796 (7th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). However, in ruling on a motion for summary judgment, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

As indicated above, there is no response to the Motion for Summary Judgment. Therefore, Plaintiff is deemed to have admitted the contents of Defendant's Motion for Summary Judgment, pursuant to Local Rule 7.1(D)(2), and the Motion for Summary Judgment will be decided by the Court on the record now before it. Raymond v. Ameritech Corp., 442 F.3d 600, 608 (7th Cir. 2006); Gonzalez v. Ingersoll Mill. Mach. Co. 133 F.3d 1025, 1030-1031 (7th Cir. 1998); Reales v. Consolidated Rail Corp., 84 F.3d 993, 997 (7th Cir. 1996). However, "strict enforcement of [Local Rules and deadlines] does not mean that a party's failure to submit a timely filing automatically results in summary judgment for the opposing party." Wienco, Inc. v. Katahn Associates, Inc., 965 F.2d 565, 568 (7th Cir. 1992). Instead, this Court must evaluate the merits of Defendant's Motion for Summary Judgment under the law ordinarily applicable to summary judgment. Id.

Title 42 U.S.C. § 1981 claims are analyzed in the same manner as Title VII claims. Herron v. DaimlerChrysler Corp., 388 F.3d 293, 299 (7th Cir. 2004). In order to establish a hostile work environment because of racial harassment, Plaintiff must show that "(1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability." Williams v. Waste Management of Illinois, 361 F.3d 1021, 1029 (7th Cir. 2004). Harassment must be both subjectively and objectively offensive. Scruggs v. Garst Seed Co., 587 F.3d 832, 840 (7th Cir. 2009). Factors to be considered are "the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance." Id. If harassment is perpetrated by a co-worker, then, in order for there to be employer liability, Plaintiff must show that his employer was negligent in either discovering the harassment or remedying the harassment. Porter v. Erie Foods Inter., Inc., 576 F.3d 629, 636 (7th Cir. 2009). An employer can avoid liability by responding promptly and appropriately to prevent harassment from recurring, through, for example, prompt investigation. Id. Plaintiff has failed to establish that any of Johnson's conduct was based on race or that the conduct unreasonably interfered with his work performance.

It is clear that Plaintiff believes that Johnson was harassing him and that the harassment was an attempt to establish some sort of dominance in the workplace. Much like a schoolyard bully, Johnson displayed behavior and made

9

comments designed to intimidate his co-workers. It is unfortunate that some do not out-grow such school-aged antics. However, there is no showing that the behavior was race related or that Johnson targeted Plaintiff because of his race. There is also no showing that Johnson's behavior created an objectively hostile work environment that unreasonably interfered with his work performance. Finally, there is no basis for employer liability.

While Plaintiff "believed" that Johnson was a racist, there is no evidence that much of the objectionable behavior outlined in his deposition was race related. Objectionable conduct "must have either a sexual or racial character or purpose to support" a claim of harassment. Hardin v. S.C. Johnson & Son, Inc., 167 F.3d 340, 346 (7th Cir. 1999). The "character" of much of Plaintiff's encounters with Johnson appear juvenile in nature and not racially motivated. In addition, the two incidents that may have a racial characteristic, the displaying of the "black power sign" and the use of the epithet "nigger," appear infrequently and were not directed against Plaintiff. By his own testimony, Plaintiff notes that the phrase was used by Johnson to refer to himself. It is also hard to imagine that the phrase, even if it were directed to Plaintiff, would be harassing as Plaintiff is not African-American (nor is there any indication in his deposition that Plaintiff actually found the use of the term harassing). As for the "black power sign," Plaintiff admits that it was displayed only once to him and once to another. He also did not complain about this incident, or any other incident, as being race related. "Title VII is not a general civility code and [a court] will not find liability based on the sporadic use of abusive language." Ford v. Minteq Shapes and Services, Inc., 587 F.3d 845, 848 (7th Cir.

2009) (citation and editing marks omitted); Stephens v. Erickson, 569 F.3d 779, 790 (7th Cir. 2009).

Particularly fatal to Plaintiff's claim is that he never was intimidated or humiliated by any of Johnson's actions. To the contrary, Plaintiff took pride in the fact that he did not cave to Johnson's bullying.. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22 (1993) ("Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation."). Johnson's actions appeared to do nothing to Plaintiff's desire to remain employed by Hanna Steel, did not appear to effect his job performance (he received a good evaluation during the period of alleged harassment), did not appear to affect him psychologically, or otherwise interfere with his ability to do his job. There is simply no showing that any of the harassment was race related or that it rose to the level of creating a hostile work environment.

Besides the instances recounted above of alleged harassment, Plaintiff also alleges that Johnson intentionally dropped the coils on him because of his race. The Seventh Circuit has stated, in the context of a sexual assault, that "assaults within the workplace create an objectively hostile work environment for an employee even when they are isolated." Lapka v. Chertoff, 517 F.3d 974, 983-984 (7th Cir. 2008). Plaintiff's belief that Johnson dropped the coils intentionally because of his race is sheer speculation.[2] There is no evidence that the incident was anything more than

---

[2] Plaintiff stated in his deposition that coworkers told him that Johnson tried to kill him. (Yancick Dep. pp. 240-243). Such testimony is hearsay. In any event, there is

11

an unfortunate workplace accident. No reasonable jury would conclude, based on the circumstances of this case, that the incident was race related.

Finally, as noted above, in order to establish employer liability for a co-worker's harassment, Plaintiff must show that he informed the employer of the harassment or that the harassment was so pervasive that a fact-finder could infer employer knowledge. Andonissamy v. Hewlett-Packard Co., 547 F.3d 841, 849 (7th Cir. 2008); Velez v. City of Chicago, 442 F.3d 1043, 1047 (7th Cir. 2006). There is no showing that Plaintiff complained to his supervisors that he was being targeted by Johnson because of his race or that Johnson's actions were racially motivated. While Plaintiff did complain[3] that Johnson's actions were inappropriate, bizarre, and disturbing, there is no showing that he indicated that he believed Johnson was acting in this manner because of his race. Failure to report the harassment (as racial harassment) is fatal to Plaintiff's claim. Defendant can hardly be expected to treat Johnson's inappropriate behavior as racial harassment if there never was a complaint that his behavior was anything more than juvenile and inappropriate behavior. Moreover, no jury would find, based on the incidents outlined above, that the harassment was so pervasive that Defendant should have been aware of it regardless of any complaint.

---

no showing of why Johnson would want to kill Yancick, let alone that he wanted to kill Yancick because of his race.

[3] Plaintiff complained to his immediate supervisors but not to either David Monroe or Richard Daniels, the persons listed in the employee handbooks. (Yancick Dep. pp. 220-221). Plaintiff also did not complain "up the chain of command" when his immediate supervisors did not give him a satisfactory response or remedy. (Yancick Dep. pp. 217-218).

# CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by Defendant [Doc. 23] is GRANTED, the "Motion to Alter or Amend the November 16, 2009 Order" filed by Plaintiff [Doc. 41] is DENIED, the Motion to Amend/Correct Memorandum in Support of Motion to Alter or Amend filed by Plaintiff [Doc. 43] is DENIED AS MOOT, the "Objection" to Defendant's Motion for Summary Judgment filed by Plaintiff [Doc. 44] is DENIED, and the Motions for Oral Arguments on Plaintiff's Motions filed by Plaintiff [Docs. 46 and 48] are DENIED.

The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff.

CASE TERMINATED

Entered this <u>20th</u> day of January, 2010

                                          s/ Joe B. McDade
                                         JOE BILLY MCDADE
                                        United States District Judge